IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBER SHANDWICK WORLDWIDE, | ) |
| Plaintiff, | ) No. 05 C ~~79~~ 709 |
| v. | ) Suzanne B. Conlon, Judge |
| DANIEL J. REID, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants are three former employees who resigned from their positions at Weber Shandwick Worldwide. As a result of their departure and subsequent competitive activities, Weber Shandwick sues for breach of confidentiality and non-solicitation agreements (Count I), conversion (Count II), and breach of fiduciary duty (Count III). Defendants jointly answered the complaint, asserted six affirmative defenses, and counterclaimed for defamation and conversion. Weber Shandwick moves to strike five of the six affirmative defenses to Counts I and III of the complaint under Fed.R.Civ.P. 12(f). More specifically, Weber Shandwick moves to strike the second and fifth affirmative defenses to Counts I and III of the complaint on the ground that they are insufficient as a matter of law, and the third, fourth and sixth affirmative defenses to Counts I and III on the ground that they are insufficiently pled.

## BACKGROUND

Count I of the complaint alleges all three defendants breached a confidentiality and non-solicitation agreement by soliciting and servicing clients they serviced during their final year of Weber Shandwick employment. Complaint ¶ 27. Count II alleges defendant Daniel J. Reid

1

converted Weber Shandwick's property to his own use and benefit. Complaint ¶ 38. Count III alleges defendant Aaron R. Schoenherr breached his fiduciary duty to Weber Shandwick by deleting all e-mails stored on his company-issued computer. Complaint ¶¶ 42-43.

Defendants jointly answered the complaint and asserted the same six affirmative defenses in response to Counts I and III. The first affirmative defense alleges the court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. The second affirmative defense describes Weber Shandwick's code of conduct and alleges defendants "were released from performing any of their alleged obligations under the 2004 [confidentiality and non-solicitation agreement]" as a result of Weber Shandwick's antecedent material breaches of the code of conduct. Answer at 10, 13. The third affirmative defense is one sentence: "Plaintiff and its IPG parent have unclean hands." *Id.* Similarly, the fourth affirmative defense consists of one sentence: "Plaintiff is waived and estopped from asserting this claim." *Id.* at 10, 14. The fifth affirmative defense alleges "Defendants are relieved from any duty to perform the alleged contract as a result of Plaintiff's failure to honor its promises under the Code of Conduct." *Id.* The sixth affirmative defense states "Defendants have various set-offs to any damages allegedly sustained by Plaintiff." *Id.* Weber Shandwick moves to strike the second and fifth affirmative defenses as legally insufficient. It moves to strike the third, fourth and sixth affirmative defenses on the ground that they are insufficiently pled.

## DISCUSSION

### I. Jurisdiction

Defendants' first affirmative defense alleges the court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. Although Weber Shandwick does not

move to strike this affirmative defense, the court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists before proceeding to the merits of the case. *Smith v. American General Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003). To invoke federal diversity jurisdiction, Weber Shandwick must establish both complete diversity and that the matter in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The complaint alleges that Weber Shandwick is a division of CMGRP, Inc., a New York corporation with its principal place of business in New York. Complaint ¶1. Defendants are citizens of Illinois and Michigan. *Id.* at ¶¶ 3-5. Thus, diversity of citizenship is alleged.

Defendants' first affirmative defense challenges the amount in controversy. Federal courts adopt the "legal certainty" test to assess whether the amount in controversy satisfies 28 U.S.C. § 1332. *Smith*, 337 F.3d at 892. Under this test, courts will find federal jurisdiction on the basis of the plaintiff's complaint unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id., citing, St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The complaint alleges plaintiff seeks "damages in excess of $75,000." Complaint ¶ 6. The complaint further seeks compensatory, incidental and consequential damages in an amount in excess of $75,000 for defendants' alleged breach of the confidentiality and non-solicitation agreement. Addendum to Count I. These allegations satisfy the amount in controversy requirement; there is no indication the claim is really for less than $75,000. The complaint adequately pleads subject matter jurisdiction under 28 U.S.C. §1332(a).

## II. Motion to Strike Affirmative Defenses

A court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). As a rule, motions to strike are disfavored because they

3

may serve only to cause delay. *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 801 (N.D. Ill. 2000). However, where motions to strike "remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Affirmative defenses are pleadings, and thus must set forth a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). An affirmative defense must include either direct or inferential allegations that, viewed as true, establish all material elements of the defense. *Man Roland v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 579 (N.D. Ill. 1999). Affirmative defenses that are simply "bare bones conclusory allegations" do not meet this standard and must be stricken. *Heller*, 883 F.2d at 1295. In evaluating whether an affirmative defense should be stricken, the court must determine: "(1) whether the matter is appropriately pleaded as an affirmative defense; (2) whether it is adequately pleaded; and (3) whether it is legally sufficient to state a claim under the Rule 12(b)(6) standard." *Gen. Elec. Capital Corp. v. Munson Marine, Inc.*, 1992 U.S. Dist. LEXIS 877, *2 (N.D. Ill. Jan. 27, 1992). If the defendant could prove no set of facts in support of the affirmative defense that would defeat the complaint, the defense must be stricken as legally inadequate. *Surface Shields, Inc. v. Poly-Tak Prot. Sys.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003).

### A.    Second and Fifth Affirmative Defenses

Defendants' second affirmative defense alleges that Weber Shandwick breached various provisions of its 2004 code of conduct, thereby releasing defendants from their obligations under a confidentiality and non-solicitation agreement. Similarly, defendants' fifth affirmative defense alleges defendants are relieved from a confidentiality and non-solicitation agreement "as a result of [Weber Shandwick's] failure to honor its promises under the Code of Conduct." Weber Shandwick

4

argues both affirmative defenses are legally insufficient because the code of conduct is not a binding contract, was not consideration for the confidentiality agreement, and is a separate document from the confidentiality agreement. Defendants respond that the code of conduct and the confidentiality agreement constitute one binding contract. A copy of the code of conduct is attached as Exhibit 2 to the complaint.

Under Illinois law, a party's material breach of contract discharges the other party from a duty to perform under the *same* contract. *M.S. Distributing Co. v. Web Records, Inc.*, 2003 U.S. Dist. LEXIS 8078, at *24 (N.D. Ill. May 12, 2003); *Snap-On Inc. v. Ortiz*, 1999 U.S. Dist. LEXIS 12104, at *41 (N.D. Ill. July 30, 1999). To avoid performance under the confidentiality agreement, defendants must establish Weber Shandwick breached the same contract. The court must therefore decide whether the code of conduct is a contract and, if so, whether it is the same contract as the confidentiality agreement. These are purely legal questions. *Liautaud v. Liautaud*, 221 F.3d 981, 985-86 (7th Cir. 2000) (applying Illinois law).

An employee handbook or other employment policies can create enforceable contractual rights if the traditional requirements for contract formation exist. *Duldulao v. St. Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 490, 505 N.E.2d 314, 318 (1987). First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. *Id.* Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. *Id.* Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Id.* When these conditions are present, then the employee's continued employment constitutes consideration for the promises contained in the statement. *Id.*

5

Defendants argue the code of conduct satisfies each of these elements. Weber Shandwick contends the code of conduct fails to meet the first element because it provides general statements of policy that do not constitute specific contractual promises. The code of conduct contains the following prefatory statements:

> This Code of Conduct expresses in general terms the standards of conduct that have always been and continue to be expected of all Company employees in their day-to-day activities and in their relationships with those with whom the Company does business. . . . The Code of Conduct is not a comprehensive document intended to address every legal or ethical issue that you might face, nor is it a description of all laws and policies that apply to Company businesses. It should be used as a guide and a resource to alert you to significant legal and ethical issues that frequently arise.

Complaint, Ex. 2, Code of Conduct. It then describes company policies on matters such as compliance with applicable laws, conflicts of interest, receipt of gifts and entertainment, conduct in the workplace, nondisparagement, and confidential information. *Id.* It states "violation of this Code of Conduct is a serious offense that *may* result in disciplinary action, suspension, dismissal, civil action by the Company or, in the case of a legal violation, fines, penalties or other legal remedies." *Id.* at p. 7 (emphasis added). The code of conduct does not contain any promissory language regarding disciplinary procedures or mandatory actions to be taken by Weber Shandwick.

In *Duldulao*, the Illinois Supreme Court found that an employee handbook created an enforceable contract because the document contained specific language regarding procedures to terminate permanent employees. 115 Ill. 2d at 490-91. The handbook stated that termination of a permanent employee "*cannot occur* without proper notice and investigation." *Id.* at 491 (emphasis in original). Another provision stated that permanent employees "*are never* dismissed without prior written admonitions." *Id.* (emphasis in original).

Similarly, two other cases cited by defendants involved clear promissory language by the employer. In *Hicks v. Methodist Medical Center*, 229 Ill. App. 3d 610, 614, 593 N.E.2d 119, 120 (3rd Dist. 1992), the handbook contained language regarding specific disciplinary and transfer procedures. The handbook stated "[i]f you accept another position . . . as a result of a job transfer, you *will be* placed on a 60-day job transfer period. During this time you *will be* eligible to continue use of all benefits. . . ." *Id.* at 612. In *Perman v. ArcVentures, Inc.*, 196 Ill. App. 3d 758, 554 N.E.2d 982 (1st Dist. 1990), the handbook contained language that discharges "*must* be approved in advance by the director of employee relations or designees. . . ." *Id.* at 765. The handbook further stated that, "[i]t is the policy of the Medical Center to assure every employee of the right of appeal, through an established grievance procedure. . . ." *Id.*

In contrast, Weber Shandwick's code of conduct does not contain clear promissory language. Rather, the code of conduct "expresses in general terms the standards of conduct" expected of employees and states that it should be used as a "guide and a resource." Complaint, Ex. 2, Code of Conduct. General statements of company policy or practice are too indefinite to create binding contractual obligations. *Vickers v. Abbot Laboratories*, 308 Ill. App. 3d 393, 407-08, 719 N.E.2d 1101, 1113 (1st Dist. 1999). Handbooks that merely provide guidelines and objectives for employer-employee relations do not constitute binding contracts. *Id.* at 409. Similarly, language that merely gives examples of the kinds of conduct that subject an employee to discharge does not amount to a contractual promise. *Czarnecki v. Claypool*, 2000 U.S. Dist. LEXIS 5647, at *10-13 (N.D. Ill. March 10, 2000) (handbook containing code of conduct was not contract because it did not contain any limitation on the type of behavior that could be punished; it provided "gratuitous warnings and nothing else"). When the purpose of an employee handbook is not to confer rights, but to warn

7

employees about conduct or circumstances that will result in termination or other adverse personnel action, the handbook does not constitute a contract. *See id.* at **12-14; *Campbell v. City of Champaign*, 940 F.2d 1111, 1112 (7th Cir. 1991) (applying Illinois law). Weber Shandwick's code of conduct contains general statements of company policy and guidelines for employee conduct. Accordingly, it fails to meet the first prong of the *Duldulao* test and does not constitute a contract.

Nor does the confidentiality and non-solicitation agreement incorporate the code of conduct by reference. Rather, the agreement merely refers to the code of conduct when describing confidential information. The agreement states that "Confidential Information includes, without limitation, business prospects . . . and any other information deemed confidential in the Non-Public and Confidential Information provision of the Company's Code of Conduct . . ." Complaint, Ex. 2, Confidentiality and Non-Solicitation Agreement, p. 1. The agreement's reference to the code of conduct to define confidential information does not transform the code of conduct into a binding contract. Nor does it mean the code of conduct and the confidentiality agreement constitute one contract. As set forth above, the code of conduct does not contain promissory language. Because the code of conduct is not a binding contract, defendants' second and fifth affirmative defenses to Counts I and III fail as a matter of law and must be stricken.

### B. Third Affirmative Defense

Defendants' third affirmative defense alleges "Plaintiff and its IPG parent have unclean hands." Weber Shandwick argues the unclean hands defense is insufficiently pled. Defendants respond that the affirmative defenses are properly pled when viewed together with other pleadings. Defendants cite no legal authority to support this argument. Indeed, the argument runs counter to basic pleading requirements. An affirmative defense must plead allegations supporting all material

8

elements of the asserted defense. *Man Roland v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 579 (N.D. Ill. 1999). Defendants' reliance on other pleadings is misplaced.

Unclean hands is an equitable defense that must allege the specific elements required to establish the defense. *Yash Raj Films (USA) Inc., v. Atlantic Video*, 2004 U.S. Dist. LEXIS 9739, *9 (N.D. Ill. May 27, 2004). Defendants must plead Weber Shandwick acted in a way that constitutes fraud, misconduct or bad faith. *Global Poly, Inc. v. Fred's Inc.*, 2004 U.S. Dist. LEXIS 3880, *17 (N.D. Ill. Mar. 11, 2004), *citing Ocean Atlantic Woodward Corp. v. DRH Cambridge Homes, Inc.*, 2003 U.S. Dist. LEXIS 4964, at *8 (N.D. Ill. Mar. 31, 2003). If defendants suggest Weber Shandwick committed fraud, the conclusory allegation that it acted with unclean hands fails to meet the particularity requirements of Fed. R. Civ. P. 9(b). *Global Poly*, 2004 U.S. Dist. LEXIS 3880 at *17. In any event, the bare bones allegation Weber Shandwick acted with unclean hands fails to meet the notice requirement of Fed. R. Civ. P. 8(a). *Id.* Where an affirmative defense is merely listed without a short statement to explain the basis for the defense, it is properly stricken. *Anicom*, 2000 U.S. Dist. LEXIS 16547 at *7-8 (striking unclean hands defense where defense merely listed without explanation of its basis). The motion to strike the unclean hands defense alleged in the third affirmative defense must be granted.

## C. Fourth Affirmative Defense

Defendants' fourth affirmative defense alleges "Plaintiff is waived and estopped from asserting this claim." Weber Shandwick argues the defense fails to put it on notice of the conduct allegedly constituting waiver and estoppel. The court agrees. Waiver and estoppel are affirmative defenses enumerated under Fed.R.Civ.P. 8(c). Waiver involves voluntary, intentional relinquishment of a known right. *Global Poly*, 2004 U.S. Dist. LEXIS 3880 at *15-16, *citing Ocean Atlantic*, 2003

9

U.S. Dist. LEXIS 4964 at *8; *Int'l Ins. Co. v. Peabody Int'l Corp.*, 1991 U.S. Dist. LEXIS 1959, at *3 (N.D. Ill. Jan. 23, 1991). Estoppel is premised on a showing of intentional deception or gross negligence amounting to constructive fraud. *United States v. American Home Assur. Co.*, 2004 U.S. Dist. LEXIS 24212, at *25 (N.D. Ill. Dec. 2, 2004). It requires a recitation of adequate facts; conclusions do not suffice. *Id.* Defendants insufficiently plead waiver and estoppel, and the motion to strike must be granted.

### D. Sixth Affirmative Defense

The sixth affirmative defense alleges defendants "have various set-offs to any damages allegedly sustained by plaintiffs." Weber Shandwick argues the sixth affirmative defense is insufficiently pled. Offset is not an affirmative defense because it does not bar the plaintiff's right of action. *Cipa Mfg. Corp. v. Allied Golf Corp.*, 1995 U.S. Dist. LEXIS 7604, *4-5 (N.D. Ill. May 24, 1995). In any event, the one sentence conclusion fails to satisfy the pleading requirements of Fed.R.Civ.P. 8(a), and the motion to strike must be granted.

### CONCLUSION

Weber Shandwick's motion to strike affirmative defenses is granted. The second and fifth affirmative defenses to Counts I and III fail as a matter of law and are stricken with prejudice. The third, fourth and sixth affirmative defenses to Counts I and III are insufficient and are stricken without prejudice.

May 12, 2005                                ENTER:

                                                                                Suzanne B. Conlon
                                                                                United States District Judge